IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

```
TERRY L. STERLING,              )
                                )
                  Plaintiff,    )
                                )
vs.                             )        Case No. 07-1094-MLB
                                )
MICHAEL J. ASTRUE,              )
Commissioner of                 )
Social Security,                )
                                )
                  Defendant.    )
_____)
```

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income payments.  The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the

1

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

2

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II.  History of case**

The administrative law judge (ALJ) Michael Dayton issued his 1st decision on August 4, 2003, finding that plaintiff was not disabled (R. at 494-507).  Plaintiff sought judicial review of the administrative decision.  On November 19, 2004, Judge Brown adopted the recommendation and report of Magistrate Judge Reid

4

and remanded the case for further proceedings (Case No. 03-1377-WEB, Doc. 14).

On June 20, 2006, administrative law judge (ALJ) Michael Dayton issued his 2nd decision (R. at 477-490).  At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since his alleged onset date of September 1, 1998 (R. at 479).  At step two, the ALJ found that plaintiff had the following severe impairments: degenerative osteoarthritis of the hands, bilateral knees, lumber spine and left hip status-post fracture, diabetes with neuropathy, bilateral carpal tunnel, major depressive disorder, dysthymia and personality disorder (R. at 479).  At step three, the ALJ found that plaintiff's impairments do not meet or equal a listed impairment (R. at 484).  After establishing plaintiff's RFC, the ALJ found at step four that plaintiff cannot perform past relevant work (R. at 489).  At step five, the ALJ found that plaintiff can perform other work which exists in significant numbers.  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 490).

**III.  Did the ALJ err in his finding at step five that plaintiff can perform a significant number of jobs that exist in the national economy?**

At step five, the ALJ made the following findings:

> To determine the extent to which these limitations erode the unskilled sedentary occupational base. the Administrative Law

Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform other work. Representative examples include a **hand mounter** with 30 jobs in the area, 350 in the state and 30,110 in the nation and a **surveillance system monitor** with 140 in the area, 1,000 in the state and 285,000 in the nation. Following the hearing, the vocational expert provided additional jobs including a **groover/stripper operator** with 690 in the area, 89, 410 in the state and a **laminating machine offbearer** with 1,470 in the area, 5,770 in the state and 497,300 in the nation and a **cotton classer aide** with 140 in the state and 51,210 in the nation (exhibit B28E)...

Based on the testimony of the vocational expert, the undersigned concludes that. considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

(R. at 490, emphasis added).

Thus, the ALJ found that plaintiff could perform the following five jobs: (1) hand mounter, (2) surveillance system monitor, (3) groover/stripper operator, (4) laminating machine offbearer, and a (5) cotton classer aide. Plaintiff contends that his RFC limitations preclude the performance of these jobs.

The ALJ's RFC limitations were as follows:

6

After careful consideration of the entire
record, the undersigned finds that the
claimant has the residual functional capacity
for a range of work with lifting or carrying
10 pounds frequently and 20 pounds
occasionally, sitting about 6 hours in an 8
hour work day, and standing or walking about
2 hours in an 8 hour work day with no
climbing of ladders, ropes or scaffolding and
occasional stooping, kneeling, crouching and
crawling. Manipulative limitations include
avoiding rapid, repetitive bilateral hand
motions and overhead reaching on the left.
**Mental limitations include moderate
limitations in the ability to work in
coordination with or proximity to others
without being distracted by them; interact
appropriately with the general public; accept
instructions and respond appropriately to
criticism from supervisors; get along with
coworkers or peers without distracting them
or exhibiting behavioral extremes; maintain
socially appropriate behavior and to adhere
to basic standards of neatness and
cleanliness; and respond appropriately to
changes in the work setting.**

(R. at 486, emphasis added).

The hypothetical question to the vocational expert (VE)
included these limitations, which included the four moderate
limitations found in Exhibit 25F (R. at 871-872), plus moderate
limitations in categories 16 (maintain socially appropriate
behavior and to adhere to basic standards of neatness and
cleanliness) and 17 (respond appropriately to changes in the work
setting) (R. at 983).  At the hearing, the VE identified the jobs
of hand mounter and surveillance system monitor as jobs that
plaintiff could perform (R. at 987).  The VE then submitted a

supplemental report regarding other jobs which plaintiff might be able to perform given his RFC.  In this report, the VE listed 3 additional jobs not identified in his testimony, the positions of groover/stripper operator, laminating machine offbearer, and cotton classer aide (R. at 761).  However, the VE made it clear in his report that the psychological limitations contained in Exhibit 25F, especially the limitation on getting along with coworkers, would preclude the performance of these 3 jobs (R. at 761).  The ALJ offered no explanation for including these three jobs as jobs that plaintiff could perform in light of his RFC, including his psychological or mental limitations.  The ALJ's findings that plaintiff can perform these 3 jobs has no evidentiary support in the record, and contradicts the opinion of the VE that plaintiff, with these psychological limitations, could not perform these 3 jobs.  Therefore, the court finds that the decision of the ALJ that plaintiff can perform the jobs of groover/stripper operator, laminating machine offbearer, and cotton classer aide is not supported by substantial evidence.

As for the position of hand mounter, plaintiff makes the following argument:

> The RFC also conflicts with the requirements
> of the position of hand mounter (DOT
> 976.684-018). Judge Dayton limited Sterling
> to avoid rapid, repetitive bilateral hand
> motions and overhead reaching on the left.
> (Tr. at 486). According to the DOT, the
> position of hand mounter requires frequent
> reaching and handling and occasional

8

> fingering. Sterling's limit on the ability to
> perform rapid, repetitive hand motions would
> preclude him from frequently reaching and
> handling.

(Doc. 7 at 17).  Plaintiff is correct that the job of hand

mounter requires frequent reaching and handling and occasional

fingering.  Selected Characteristics of Occupations Defined the

Revised Dictionary of Occupational Titles (U.S. Dept. of Labor,

1993 at 308).  In the case of Gallegos v. Barnhart, 99 Fed. Appx.

222, 224-225 (10th Cir. June 2, 2004), the court held as follows:

> Plaintiff asserts that the district court's
> approval of the ALJ's use of the opinion of
> the examining doctor, Dr. Davis, that
> plaintiff is not precluded from frequent
> reaching, handling, or fingering is
> inconsistent with the ALJ's finding that
> plaintiff is restricted from repetitive
> actions. Plaintiff presumes the terms
> "frequent" and "repetitive" are synonymous,
> but they are not. In identifying jobs the
> plaintiff could perform, the VE expressly
> construed the term "repetitive" to mean "from
> two-thirds to 100 percent of the time."
> Aplt.App., Vol. II at 48. With that
> understanding, the ALJ found that the
> plaintiff could perform jobs that require
> frequent reaching, handling, or fingering,
> even with an RFC that precludes him from
> performing repetitive actions with his
> remaining hand. Because reaching, handling,
> or fingering that is performed "[f]requently"
> is performed only " 1/3 to 2/3 of the time,"
> the ALJ's findings are not inconsistent.
> Selected Characteristics of the Occupations
> Defined in the Revised Dictionary of
> Occupational Titles [SCO], App. C, Physical
> Demands at C-3 (1993).

For the reason set forth in Gallegos, the court finds that the

limitation on the ability to perform rapid, repetitive bilateral

9

hand motions is not inconsistent with the job requirement that
plaintiff be able to engage in frequent reaching and handling and
occasional fingering.

Plaintiff also raises the question of whether a limitation
to avoid overhead reaching on the left is inconsistent with a job
requiring frequent reaching and handling.  In the case of <u>Segovia</u>
<u>v. Astrue</u>, 226 Fed. Appx. 801, 804 (10th Cir. March 23, 2007),
the court held as follows:

> Both the ticket-taker and cafeteria-attendant
> positions require..."frequent" reaching, see
> SCO §§ 09.05.02, 09.05.08; Aplt.App. at 439,
> 446, while Ms. Segovia is limited to
> occasional overhead reaching. For purposes of
> the SCO, however, "reaching" is defined as
> "[e]xtending hand(s) and arm(s) in any
> direction." SCO at C-3 (emphasis added). **The
> SCO does not separately classify overhead
> reaching. Thus, under the SCO, even a job
> requiring frequent reaching does not
> necessarily require more than occasional
> overhead reaching. The VE was aware of Ms.
> Segovia's limitations on overhead reaching,
> and he testified both that she could perform
> the jobs he identified and that his opinion
> of the jobs open to her was consistent with
> the DOT's specifications. Aplt.App. at
> 391-92, 395. In these circumstances, the VE's
> testimony does not conflict with the DOT and
> SCO so much as it clarifies how their broad
> categorizations apply to this specific case.**
> See Carey v. Apfel, 230 F.3d 131, 146 (5th
> Cir.2000) ("To the extent that there is any
> implied or indirect conflict between the
> vocational expert's testimony and the DOT in
> this case, ... the ALJ may rely upon the
> vocational expert's testimony provided that
> the record reflects an adequate basis for
> doing so.... [A]ll kinds of implicit
> conflicts are possible and the categorical

> requirements listed in the DOT do not and
> cannot satisfactorily answer every such
> situation."). Further, the DOT descriptions
> for cafeteria attendant and ticket taker do
> not indicate that these jobs predominantly
> involve overhead reaching rather than other
> types of reaching. See DOT §§ 311.677-010,
> 344.667-010; Aplt.App. at 437, 445.

(emphasis added).

Nothing in the description of hand mounter indicates that it requires frequent overhead reaching.  Dictionary of Occupational Titles (DOT), § 976.684-018.  The VE's testimony indicated that he based his opinions on the DOT, his experience, professional training, education, and certifications (R. at 998-999), and that he was specifically aware that the definition of reaching in the DOT included overhead reaching (R. at 1001-1002).  The VE was aware of plaintiff's limitation to avoid overhead reaching on the left, he testified that the DOT was one of the sources of his information, and he indicated that he was aware that the definition of reaching in the DOT included overhead reaching.[1] With this information, the VE testified that plaintiff could perform the job of a hand mounter.  In both this case and in Segovia, the VE was aware of the claimant's limitation on overhead reaching, and he was aware of the DOT specifications for

---

[1]Once the VE stated that he was relying on the DOT, the ALJ had no further duty to investigate or ask about any possible conflict between the VE testimony and information in the DOT. Gibbons v. Barnhart, 85 Fed. Appx. 88, 92-93 (10th Cir. Dec. 18, 2003).

the job.  Under the SCO, even a job requiring frequent reaching
does not necessarily require overhead reaching on the left.  In
these circumstances, the VE's testimony does not conflict with
the DOT and SCO so much as it clarifies how their broad
categorizations apply to this specific case.  Although this
matter could be clarified because the case is being remanded for
other reasons, the court does not find clear error by the ALJ on
this issue.

In regards to the final position of surveillance system
monitor, plaintiff made the following argument:

> [T]he position of surveillance system monitor
> (DOT 379.367-010) requires dealing with
> people. In fact, it is listed as a work
> temperament. However, according to Judge
> Dayton, Sterling is moderately limited in the
> ability to work in coordination with others,
> interact with the public, get along with
> coworkers and peers and maintain socially
> acceptable behavior. (Tr. at 486). This is
> even more problematic as the position also
> requires the ability to speak before an
> audience with poise, voice control, and
> confidence using correct English and a
> well-modulated voice. Again, Sterling is
> moderately limited in the ability to maintain
> socially acceptable behavior, much less speak
> before an audience with poise, voice control
> and confidence.

(Doc. 7 at 16).  Although the position of surveillance system
monitor does call for dealing with people and speaking before an
audience, the moderate limitations described in plaintiff's RFC[2]

---

[2]Mental limitations include moderate limitations in the
ability to work in coordination with or proximity to others

do not necessarily preclude him from all dealings with people. The court addressed this issue in its 1st report and recommendation on September 17, 2004, as follows:

> Plaintiff contends that the requirements of this position [sales attendant] conflict with the mental limitations established by the ALJ, especially given the fact that the position requires dealing with customers, but that the ALJ failed to address the conflict. However, the court does not find that a clear conflict exists between the DOT job definition and plaintiff's mental limitations. "Moderate limitations," as defined in POMS § DI 24510.063, means that the individual's capacity to perform the activity is impaired. By contrast, the next category, "marked limitations," means that the individual cannot usefully perform or sustain the activity [footnote omitted]. Therefore, a person with moderate limitations, is impaired, but can still perform the activity.

(R. at 539-540).  The definitions of moderate and marked limitations remain the same in POMS § DI 24510.063 today.[3]  There is no evidence in the record which clearly establishes that plaintiff cannot perform the job duties of a surveillance system monitor given his moderate psychological or mental limitations.

---

without being distracted by them; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and respond appropriately to changes in the work setting (R. at 486).

[3](http://policy.ssa.gov/poms.nsf/lnx/0424510063!opendocument, Dec. 7, 2007).

In summary, the court finds that the evidence does not support a finding that plaintiff can perform the duties of a groover/stripper operator, a laminating machine offbearer, or a cotton classer aide due to his mental limitations.  However, the court further finds that the evidence does support a finding that plaintiff can perform the duties of a hand mounter and a surveillance system monitor with his RFC limitations.

**IV.  Has the ALJ identified a significant number of jobs which plaintiff can perform?**

The two remaining positions which plaintiff can perform have 170 jobs in the area, 1,350 jobs statewide, and 315,110 jobs in the nation (R. at 490).  If the Commissioner finds that plaintiff cannot perform past relevant work given his RFC, the Commissioner will then determine if plaintiff can perform work which exists in significant numbers either in the region where such individual lives or in several regions of the country.  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c)(1).

In the case of <u>Trimiar v. Sullivan</u>, 966 F.2d 1326 (10th Cir. 1992), the court held as follows:

> [T]he vocational expert testified that the Appellant could perform work in three unskilled jobs: escort driver, recreational facility attendant, and telephone solicitor...The expert testified that 650 to 900 such jobs exist in the state of Oklahoma ...The ALJ found that "[t]hese jobs exist in substantial numbers in the region in which the claimant resides and in the national economy."...Resolution of the issue raised by

14

Appellant requires this Court to address what
constitutes a "significant number" for
purposes of the statute.

This Circuit has never drawn a bright line
establishing the number of jobs necessary to
constitute a "significant number" and rejects
the opportunity to do so here. Our reluctance
stems from our belief that each case should
be evaluated on its individual merits.
Notwithstanding our reluctance, we note that
several factors go into the proper evaluation
of significant numbers. The Eighth Circuit
has succinctly stated these factors:

> A judge should consider many
> criteria in determining whether
> work exists in significant numbers,
> some of which might include: the
> level of claimant's disability; the
> reliability of the vocational
> expert's testimony; the distance
> claimant is capable of travelling
> to engage in the assigned work; the
> isolated nature of the jobs; the
> types and availability of such
> work, and so on.

Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th
Cir.1988) (quoting Hall v. Bowen, 837 F.2d
272, 275 (6th Cir.1988)). "The decision
should ultimately be left to the [ALJ's]
common sense in weighing the statutory
language as applied to a particular
claimant's factual situation."

Trimiar, 966 F.2d at 1330.

In the case of Allen v. Barnhart, 357 F.3d 1140, 1145-1146

(10th Cir. 2004), the court discussed the application of harmless

error when some jobs remain that the plaintiff can perform.  The

court discussed the Trimiar opinion, stating that the 650-900

statewide jobs identified in that case was small enough to put

15

the issue in a "gray area" requiring the ALJ to address whether
plaintiff can perform work which exists in significant numbers.
Because of the ALJ's failure to assess whether the remaining
number of jobs (100 statewide) constituted a significant number
of jobs in connection with the Trimiar factors, the court held
that it would be an improper exercise in judicial factfinding
rather than a proper application of harmless-error principles to
determine in the 1st instance that a significant number of jobs
remained that plaintiff could perform.  Therefore, the case was
remanded for further proceedings.

     This court has previously addressed two cases in which the
same issue has arisen.  In the case of Coleman v. Barnhart, Case
No. 05-1179-JTM (D. Kan. May 10, 2006), the two remaining jobs
which plaintiff could perform included 200 in Wichita, 1,090 in
Kansas, and 141,000 nationwide.  The court held that the
statewide number of jobs was not significantly different from the
range of 650-900 statewide jobs which the Allen court determined
falls within the "gray area" requiring the ALJ to address whether
or not such numbers constitute a significant number of jobs.
Therefore, the court declined to apply the harmless error
doctrine and remanded the case for further hearing.  Case No. 05-
1179, Doc. 13 at 11, 13.

     In the case of Westmoreland v. McMahon, Case No. 06-1068-JTM
(D. Kan. Sept. 5, 2007), the remaining job that plaintiff could

perform included 70 locally, 850 statewide, and 125,000
nationwide.  The court found that the 850 statewide jobs fell
within the "gray area" identified in <u>Allen</u> requiring the ALJ to
address whether or not such a number constitutes a significant
number of jobs.  The court therefore remanded the case for
further proceedings.  Case No. 06-1068, Doc. 11 at 12-14; 2007 WL
2900284 at *5-6.

Thus, in cases involving 650-900 statewide jobs, 850
statewide jobs, and 1,090 statewide jobs, the 10th Circuit and
this court have remanded the cases back to the Commissioner in
order to determine if the remaining jobs constitute a
"significant number" of jobs.  In this case (Sterling), 1,350
jobs remain statewide.  Thus, the remaining statewide jobs in
this case do not differ substantially from the jobs remaining in
the cases cited above.  In <u>Trimiar</u>, the court indicated that the
10th Circuit has never drawn a bright line establishing what
constitutes a "significant number" of jobs, noting that each
individual case should be evaluated on its individual merits,
after considering numerous criteria.  The court indicated that
the decision should ultimately be left to the ALJ's common sense
in weighing the statutory language as applied to a particular
claimant's factual situation.  Therefore, as the court held in
<u>Allen</u>, it would be an improper exercise in judicial factfinding
rather than a proper application of harmless error principles to

17

find that the remaining number of jobs constitutes work which exists in significant numbers.  The case shall therefore be remanded in order for the Commissioner to evaluate this case in light of the case law set forth above.

Defendant argues that the court should consider the fact that the VE testified that plaintiff had could perform the job of belt repairer, with 2,210 jobs in the state and 192,300 jobs in the nation (Doc. 10 at 6-7; R. at 984-985).  However, the ALJ did not state in his decision that this was a job that plaintiff could perform.  An ALJ's decision should be evaluated based solely on the reasons stated in the decision.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action.  Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985).  A reviewing court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision.  Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).  By considering legal or evidentiary matters not considered by the ALJ, a court risks violating the general rule against post hoc justification of administrative action.  Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).  Because this position was not found by the ALJ to be a job that plaintiff could perform, it cannot be considered by the court.

Furthermore, the court would note that the VE testified that, based on the definition of moderate impairment given him by plaintiff's counsel at the hearing, he would eliminate the position of belt repairer as a job that plaintiff could perform (R. at 994-996).  Thus, the record reflects a potentially valid reason which may have led the ALJ not to include the belt repairer position as a job that plaintiff could perform with his limitations.

**V.  Did the ALJ err in making his RFC findings?**

According to SSR 96-8p the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the

19

court will conclude that his RFC conclusions are not supported by substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003).  It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions.  Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.  Such bare conclusions are beyond meaningful judicial review.  Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ gave clear reasons in his opinion for giving little weight to certain medical opinions contained in the record (R. at 480, 481, 482-483, 488-489).  He indicated that he considered the medical opinions in the state agency assessments, but stated that additional evidence received into the records indicated that plaintiff was limited as noted in the RFC (R. at 488).  However,

20

the ALJ failed to identify what additional evidence indicated
that plaintiff was limited as noted in the RFC.

Exhibit 10F is the 1st state agency assessment performed on
April 29, 2002 (R. at 404-413).  Exhibit 26F is the 2nd state
agency assessment performed on October 15, 2004 (R. at 876-883).
The ALJ's RFC assessment (R. at 486) matches one limitation which
is contained only in the 1st assessment (limit to 2 hours
standing/walking), but also matches limitations contained only in
the more recent 2nd state agency assessment (no limitations on
balancing or climbing stairs, avoid rapid, repetitive bilateral
hand motions, and avoid overhead reaching on the left).  However,
due to the failure of the ALJ to clarify the basis for his
physical RFC findings, plaintiff believed the ALJ's findings were
based on the 2nd state agency assessment (Doc. 7 at 20-21), while
defendant indicated that they did not believe that the ALJ's
physical RFC findings were based on the 2nd state agency
assessment (Doc. 10 at 9-10).  At the hearing, the ALJ had the VE
reference both Exhibits 10F and 26F (R. at 984, 988), but finally
adopted an RFC that incorporated some aspects of both
assessments.  Therefore, on remand, the ALJ shall comply with the
requirements of SSR 96-8p, and clarify the bases for his RFC
findings.

Furthermore, the ALJ offered no explanation for not
including the limitations contained in the 1st assessment of

21

avoiding all hazards and concentrated exposure to extreme cold due to numbness in plaintiff's feet.[4]  Although legitimate reasons may exist in the record not to include these limitations, on remand, the ALJ shall explain in his decision the reason for not including these limitations, especially in light of the fact that the ALJ included these limitations in his 1st decision.[5]

---

[4]The ALJ's 1st decision on August 4, 2003 included these limitations (R. at 504)

[5]In the case of <u>Kency v. Barnhart</u>, Case No. 03-1190-MLB (D. Kan. Nov. 16, 2004, Doc. 21 at 7-9), the court held as follows:

> ...the ALJ simply listed all the evidence contained in the record and then set forth his conclusion without explaining the inconsistencies and ambiguities contained in the opinions. He did not connect the dots, so to speak, as is required by S.S.R. 96-8p. It may well be that upon remand, the ALJ will reach the same conclusion. Nevertheless, S.S.R. 96-8p is defendant's requirement and ALJs presumably are the experts whose responsibility it is to know and follow defendant's requirements...

> Most important, the ALJ must explain how the decision was reached. When an ALJ merely summarizes the facts, notes that he has considered all of the facts, and then announces his decision, there is nothing for the court to review. The court cannot know how the ALJ analyzed the evidence. When the evidence is contradictory or ambiguous, as it is in most cases, the court cannot know which evidence was given what weight, or how the ambiguities were resolved. Therefore, to determine whether substantial evidence supports the conclusion, the court would have to reweigh the evidence. Since that option is precluded by law, the court can only remand to the defendant for a proper explanation of

Although the ALJ did not indicate the basis for his mental RFC findings, his findings of six moderate limitations match the testimony of Dr. Hutchison, the medical expert who testified at the hearing (R. at 982-983, <u>see</u> R. at 871-872).  The court finds no error by the ALJ in relying on the testimony of Dr. Hutchison in making his mental RFC findings.

Plaintiff filed his first application for disability benefits on January 6, 1999.  Plaintiff subsequently filed three additional applications for disability benefits.  The present case involves plaintiff's third and fourth applications (R. at 477).  Plaintiff is alleging an onset date of September 1, 1998 (R. at 479).  This case is now being remanded for a 2nd time. The Commissioner is reminded that he is not entitled to adjudicate a case <u>ad</u> <u>infinitum</u> until he correctly applies the proper legal standard and gathers evidence to support his conclusion.  <u>Sisco v. Dep't of Health & Human Serv.</u>, 10 F.3d 739, 746 (10th Cir. 1993).

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided

---

how the evidence was weighed and ambiguities resolved.

to counsel of record for the parties.  Pursuant to 28 U.S.C. §
636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule
72.1.4, the parties may serve and file written objections to the
recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on December 10, 2007.

s/John Thomas Reid
JOHN THOMAS REID
United States Magistrate Judge